**Docket No. 22-55895**

*In the*

# United States Court of Appeals

*For the*

# Ninth Circuit

DONNELLE WEAR,

*Plaintiff-Appellant,*

and

HEATHER BLANCHARD, as guardian ad litem of her minor child I.C.W.,
successor in interest to Joseph Alan Wear,

*Plaintiff,*

v.

COUNTY OF LOS ANGELES; ADRIAN DE CASAS, Deputy Sheriff;
JONATHAN PAWLUK, Deputy Sheriff; UNITED STATES OF AMERICA;
CESAR GUERRO JAVIER ECHEVARRIA, United States Postal Service Postal Inspector/Police
Officer; JOSEPH PAVON, United States Postal Service Postal Inspector/Police Officer;
F. TALABI, United States Postal Service Postal Inspector/Police Officer,

*Defendants-Appellees.*

_____

*Appeal from a Decision of the United States District Court, Central District of California,*
*Case Nos. 8:19-cv-02438-JVS-DFM · 8:20-cv-00459-JVS-DFM*
*8:21-cv-00937-JVS-DFM · Honorable James V. Selna, District Judge*

## APPELLANT'S OPENING BRIEF

PETER L. CARR
NA'SHAUN L. NEAL
LAUREN K. MCCRAE
**PLC LAW GROUP**
3756 Santa Rosalia Drive Suite 326
Los Angeles, CA 90008
Telephone: (310) 400-5890
pcarr@theplclawgroup.com • nneal@theplclawgroup.com
lmcrae@theplclawgroup.com

*Attorneys for Plaintiff and Appellant Donnelle Wear*

 COUNSEL PRESS · (213) 680-2300　　　　PRINTED ON RECYCLED PAPER 

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................1

JURISDICTIONAL STATEMENT .......................................2

ISSUES PRESENTED............................................................3

STATEMENT OF THE CASE................................................3

STANDARD OF REVIEW .....................................................6

SUMMARY OF THE ARGUMENT ......................................8

ARGUMENT ...........................................................................8

    1.    THE DISTRICT COURT INCORRECTLY GRANTED
    SUMMARY JUDGMENT BECAUSE THE RECORD
    CONTAINS SUFFICENT EVIDENCE TO
    DEMONSTRATE THE DEPUTIES' CONDUCT
    VIOLATED APPELLANT'S FOURTHEENTH
    AMENDMENT CLAIM ...................................................8

        A.    LEGAL STANDARD................................................9

        B.    A REASONABLE JURY COULD INFER
            FROM THE EVIDENCE ACTUAL DELIBERATION
            WAS PRACTICAL, THUS THE DELIBERATE
            INDIFFERENCE STANDARD APPLIES ............................10

        C.    DEPUTY PAWLUK VIOLATED THE
            FOURTEENTH AMENDMENT BECAUSE HE
            ACTED WITH DELIBERATE INDIFFERENCE
            TO THE SUBSTANTIAL RISK OF SERIOUS
            HARM FACED BY MR. WEAR, WHILE HE PLACED
            HIS BODY WEIGHT ON MR. WEAR FOR OVER
            FIVE MINUTES ...................................................13

        D.    ALTERNATIVELY, A REASONABLE JURY
            COULD INFER FROM THE EVIDENCE THAT
            DEPUTY PAWLUK'S ACTIONS WERE PURPOSEFUL
            AND UNRELATED TO LEGITIMATE LAW
            ENFORCEMENT OBJECTIVES ...........................................16

i

E. THE DISTRICT COURT ERRED WHEN IT GRANTED SUMMARY JUDGMENT BECAUSE A REASONABLE JURY COULD INFER FROM THE EVIDENCE THAT DEPUTY DE CASAS WAS THE TRAINING OFFICER FOR DEPUTY PAWLUK AND WAS AN INTEGRAL PARTICIPANT IN DECEDENT'S DEATH ..........................18

F. BECAUSE THE DEPUTIES ARE NOT ENTITLED TO QUALIFIED IMMUNITY, THE DISTRICT COURT'S GRANTING OF SUMMARY JUDGMENT SHOULD BE REVERSED.....................................................18

CONCLUSION ....................................................................................................21

STATEMENT OF RELATED CASES ..................................................................22

CERTIFICATE OF COMPLIANCE .....................................................................23

CERTIFICATE OF SERVICE ..............................................................................24

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Creighton,*
   483 U.S. 635 (1987) ...................................................................19

*Cty. of Sacramento v. Lewis,*
   523 U.S. 833 118 S. Ct. 1708 (1998) ....................................20

*Drummond v. City of Anaheim,*
   343 F.3d 1052 (9th Cir. 2003). ...................................... 14, 15, 20, 21

*Estate of Kosakoff v. City of San Diego,*
   460 F.Appx. 652 (9th Cir. 2011) ............................................9

*Estate of Lopez v. Gelhaus,*
   871 F.3d 998 (9th Cir. 2017) .................................................7

*George v. Morris,*
   736 F.3d 829 (9th Cir. 2013) .................................................7

*Gonzalez v. City of Anaheim,*
   747 F.3d 789 (9th Cir. 2014) .................................................7

*Mattos v. Arganano,*
   661 F.3d 443 (9th Cir. 2011) ...............................................19

*Moreland v. Las Vegas Metro. Police Dep't,*
   159 F.3d 365 (9th Cir. 1998) ...............................................20

*Pearson v. Callahan,*
   555 U.S. 223 (2009) ................................................... 19, 20

*Plumhoff v. Rickard,*
   134 S.Ct. 2012 (2014) .........................................................19

*Porter v. Osborn,*
   546 F.3d 1131 (9th Cir. 2008) ............................... 8, 9, 12, 16

*Prison Legal News v. Lehman,*
   397 F.3d 692, 702 (9th Cir. 2005) .......................................19

*Rodriguez v. County of Los Angeles*,
    891 F.3d 776 (9th Cir. 2018) ..................................................................19

*Santos v. Gates*,
    287 F.3d 846 (9th Cir. 2002) ..................................................................8

*Saucier v. Katz*,
    553 U.S. 194 (2001) ..............................................................................20

*Smith v. City of Fontana*,
    818 F.2d 1411, 1418 (9th Cir.1983) ......................................................9

*Sorrels v. McKee*,
    290 F.3d 965, 970 (9th Cir. 2002) ........................................................19

*Stanton v. Sims,*
    571 U.S. 3, 134 S.Ct. 3 (2013) ..............................................................19

*Wilkinson v. Torres*,
    610 F.3d 546 (9th Cir. 2010), cert. denied, 562 U.S. 1219 (2011) .................9, 16

**Statutes**

28 U.S.C. § 1331 ...........................................................................................2

42 U.S.C. § 1983 ..................................................................................... 1, 2, 9

**Constitutional Provisions**

Fourteenth Amendment of the United States Constitution.......................................1

## INTRODUCTION

This case challenges the excessive force that killed Appellant Donelle Wear's son. On December 7, 2017, Los Angeles County Sheriff Department ("LASD") Deputy Jonathan Pawluk used excessive force after they handcuffed decedent Joseph Allen Wear by repeatedly dropping his knee and placing pressure on his neck after it was appeared decedent was struggling to breathe. As a result of Pawluk's force, Appellant's son was killed. LASD Adrian De Casas was Deputy Pawluk's training officer and failed to intervene in the tragic killing of Mr. Wear.

Appellant brought this action pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment of the United States Constitution. Appellant filed the complaint for damages on August 8, 2019. 11-ER-2356. On July 15, 2020, Appellant filed an Amended Complaint for Damages. 11-ER-2230-2243.

On August 25, 2022, the Judge James V. Selna entered judgment granting Defendants' Motion for Summary Judgment as to Plaintiff Wear's Amended Complaint. 1-ER-2-14. The district court order determined that the deputies did not violate the Constitution because the evidence did not demonstrate the deputies did not intend to harm decedent.

The issues underlying this appeal arise out of the district court's misapplication of the summary judgment standard. Appellant presented evidence that a reasonable juror could infer that based on the deputies' training, decedent

1

being handcuffed and detained, and a third-party informing the deputies that decedent was struggling to breathe for an elongated period time that Deputy Pawluk acted with a purpose to harm. This brief will demonstrate that the district court's application of the summary judgment and qualified immunity principles to the facts of this case was incorrect because the district court failed to consider reasonable inferences from facts in the light most favorable to Appellant.

## JURISDICTIONAL STATEMENT

This action is for violation of the Fourteenth Amendment of the United States Constitution (42 U.S.C. § 1983). Wear's original complaint was filed in the United States District Court for the Central District of California on March 6, 2020. 11-ER-2356. The district court had jurisdiction pursuant to 28 U.S.C. § 1331.

On August 25, 2022, the Honorable James V. Selna of the United States District Court for the Central District of California granted summary judgment. 1-ER-1-14. Appellant filed her Notice of Appeal on September 22, 2022. 11-ER-2370.

This appeal is from a grant of a motion for summary judgment determining Appellee were entitled to summary judgment because Appellant has not demonstrated the deputies intended to harm decedent.

## ISSUES PRESENTED

1.      Did the district court err in granting Defendants' motion for summary judgment by applying the heighten "purpose to harm" standard instead of the deliberate indifference standard?

2.      Did the district court err in granting Defendants' motion for summary judgment by failing to view the light most favorable to Plaintiff by not considering a third-party witness account of the event that led to the death of decedent?

## STATEMENT OF THE CASE

On December 7, 2018, Los Angeles County Sherriff Department Deputies De Casas and Pawluk were on patrol, when they responded to an incident near the intersection of 74th Street and Central Avenue in Los Angeles, California.  8-ER-1611, 9-ER-1720.  Deputy De Casas was the training officer for Deputy Pawluk. 8-ER-1611, 9-ER-1723, 9-ER-1743.

When Deputy De Casas arrived with his partner Deputy Pawluk, Decedent was face down in the middle of the street with two U.S. Postal Service ("USPS") Officers on top of him.  8-ER-1611, 9-ER-1738, 9-ER-1742, 9-ER-1744-1745. One of the USPS officers placed his knee on decedent's lower body, while another USPS officer was restraining decedent's right arm. 8-ER-1611, 9-ER-1753-1754. Then, Deputy Pawluk, a 6'6 tall 230-pound, male, intervened and placed his knee on decedent's upper back. 8-ER-1612, 9-ER-1736-1737, 1747, 1777.  Then,

3

Deputy Pawluk used his left leg to secure Decedent's left arm against his body behind his back. 8-ER-1612, 9-ER-1755-1756.

Deputy Pawluk placed Decedent into his handcuffs. 9-ER-1755-1756. Deputy Pawluk, then, removed the handcuffs of the USPS Postal Officers from Decedent. 8-ER-1612, 9-ER-1755-1756, 1767-1769, 1770, 1772-1773. Then, the postal officer got off Decedent. 8-ER-1612, 9-ER-1779-1780.

After Deputy Pawluk successfully handcuffed both of decedent's wrists, Deputy Pawluk continued to restrain Decedent face-down on the asphalt ground, by using his knees to apply extreme pressure to Decedent's upper body. 8-ER-1612, 9-ER-1755-1756, 1767-1769, 1770, 1772-1773. Deputy Pawluk placed his right knee on Decedent's hamstring and left knee on his back. 8-ER-1612, 9-ER-1755-1756, 1767-1769, 1770, 1772-1773.

A third-party witness, Mario Ernesto Palacios, who witnessed the encounter between decedent and the postal police and LASD deputies described this tragic event. 9-ER-1767-1769. Mr. Palacios observed Decedent screaming in pain. 9-ER-1767-1769. After Deputy Pawluk placed his body weight on decedent's shoulder blade, decedent screamed for the deputies to let him go. 9-ER-1771-1773. He also saw decedent's body begin to tremble and his face turn purple. 9-ER-1767-1769. At this time, Deputy Pawluk's knee was between the decedent's shoulders, below the neck or nape of the neck. 8-ER-1613, 9-ER-1772-1773.

4

Mr. Palacios yelled, "Let him go. You're killing him." 8-ER-1614, 9-ER-1772-1773, 1781. Then, he observed the Deputy Pawluk place more pressure on Mr. Wear's neck and saw blood spilling out of Mr. Wear's mouth. 8-ER-1613, 9-ER-1772-1773. The deputies responded, "Get away, that they were the authorities, [and] that [he] had no reason to be there, that it was fine that [Mr. Palacios] was holding him down before they got there, but now that they were there, there's no reason for [him] to be close." *Id*. Mr. Palacios estimates the officers and deputies' restraint of Mr. Wear until the time he noticed Mr. Wear died was approximately 15 to 20 minutes." *Id*.

The Los Angeles County Sheriff Department has a policy for their deputies to intervene when they witness other employees commit excessive force. 9-ER-1782. Deputy De Casas did not intervene to stop Deputy Pawluk from the continued chest compression despite decedent being detained with handcuffs.

Dr. Marvin Pietruszka opined that Deputy Pawluk caused Mr. Wear's death by positional asphyxia by applying pressure to his back for at least 4 to 5 minutes. 8-ER-1615, 9-ER-1817, 1826. Dr. Marvin Pietruszka further opined hypoxia (i.e., a lack of oxygen) resulting from head trauma and chest compression caused decedent to suffer fatal cardiac arrythmia. 9-ER-1824. Given Deputy Pawluk's weight at 230 pounds, any pressure Deputy Pawluk applied to Mr. Wear's back would have restricted Mr. Wear's abdominal movement and any pressure that

Deputy Pawluk would have applied to Mr. Wear's thorax would have contributed to the restriction of Mr. Wear's respirations which ultimately resulted in a cardiorespiratory arrest. 9-ER-1825-1826. Deputy Pawluk contributed to decedent's death by maintaining pressure on Mr. Wear's posterior thorax while in a prone position. 9-ER-1825. He estimated that it takes approximately 4 to 5 minutes to cause death by positional asphyxia. 9-ER-1826. Dr. Pietruszka further opined that methamphetamine toxicity was not the cause of Decedent's death. 9-ER-1827.

According to Dr. Pietruska because Decedent was a methamphetamine user, the amount of methamphetamine in Decedent's body only caused him to suffer a fatal cardiac arrhythmia because he was subjected to oxygen deprivation while restrained in a prone position by Deputy Pawluk. 9-ER-1827. He further explained that many chronic users of methamphetamine maintain low levels of methamphetamine that can fall into the toxic and lethal range. 9-ER-1827.

Donelle Wear is the mother of decedent Joseph Allen Wear. 8-ER-1611, 9-ER-1718.

## STANDARD OF REVIEW

A district court's grant of summary judgment to Federal Rule of Civil Procedure 56 is reviewed *de novo*. *Andrews v. City of Henderson,* 35 F.4th 710, 715 (9th Cir. 2022). This Court will only "affirm a grant of summary judgment if

6

'there are no genuine dispute as to any material fact' when viewing the record in the light most favorable to the nonmoving party, such that the moving party 'is entitled to judgment as a matter of law.'" *Ochoa v. City of Mesa*, 26 F.4th 1050, 1055-56 (9th Cir. 2022)(citing Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).) "A factual issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id*.

Summary judgment should be granted sparingly in excessive force cases. *Gonzalez v. City of Anaheim*, 747 F.3d 789, 795 (9th Cir. 2014)(*en banc*). The Court is to "'examine all the evidence in the record, such as medical reports, contemporaneous statements by the officer and the available physical evidence, . . . to determine whether the officer's story is internally consistent and consistent with other known facts.'" *Id.* Furthermore, the court is required to "'examine circumstantial evidence that, if believed, would tend to discredit the police officer's story.'" *Id.; see also Estate of Lopez v. Gelhaus*, 871 F.3d 998, 1006 (9th Cir. 2017).

The Ninth Circuit "permits the decedent's version of events to be constructed circumstantially from competent expert and physical evidence, as well as from inconsistencies in the testimony of law enforcement." *George v. Morris*, 736 F.3d 829, 834 (9th Cir. 2013)(*citing Scott v. Henrich*, 39 F.3d 912, 915 (9th

Cir. 1994); *Santos v. Gates*, 287 F.3d 846, 852 (9th Cir. 2002)). The district court is only allowed to grant summary judgment if upon accepting the plaintiff's facts as true that no jury could conclude that the alleged conduct meets the deliberate indifference standard. *See Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008); *Tatum v. Moody*, 768 F.3d 806, 820-21 (9th Cir. 2014).

## SUMMARY OF THE ARGUMENT

This appeal requires the Court to address several issues. First, whether the district court applied the appropriate standard of proof to Appellant's Fourteenth Amendment claim. The appeal also requires the Court to address whether deputies were not entitled to qualified immunity because the evidence presented shows the deputies' conduct shocked the conscience.

## ARGUMENT

**1. THE DISTRICT COURT INCORRECTLY GRANTED SUMMARY JUDGMENT BECAUSE THE RECORD CONTAINS SUFFICENT EVIDENCE TO DEMONSTRATE THE DEPUTIES' CONDUCT VIOLATED APPELLANT'S FOURTEENTH AMENDMENT CLAIM.**

The district court erred when it granted summary judgment because material issues of disputed facts existed as to whether the Los Angeles County Sherriff Department deputies' conduct shocked the conscience.

### A. LEGAL STANDARD

The Fourteenth Amendment protects familial relationships from unwarranted state interference. *Smith v. City of Fontana*, 818 F.2d 1411, 1418 (9th Cir.1983). Where state action resulting in the unlawful death of a family member is alleged, surviving family members may bring a claim under §1983 for violation of their due process rights in the companionship and society of the decedent. *Id*. at 1419.

Official conduct that shocks the conscience in depriving parents of that interest is cognizable as a violation of due process. *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010), cert. denied, 562 U.S. 1219 (2011). "Depending on the circumstances, plaintiffs may establish a Fourteenth Amendment violation by showing that the officers 'acted with deliberate indifference' or by showing that they 'acted with a purpose to harm' the suspect." *Estate of Kosakoff v. City of San Diego*, 460 F.Appx. 652, 654-55(9th Cir. 2011) (quoting *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008). "Where actual deliberation is practical, then an officer's deliberate indifference may suffice to shock the conscience. On the other hand, where a law enforcement officer makes a snap judgment because of an escalating situation, his conduct may only be found to shock the conscience if he acts with a purpose to harm unrelated to legitimate law enforcement objectives." *Wilkinson*, 610 F.3d at 554 (internal quotation marks and citations omitted).

9

**B.    A REASONABLE JURY COULD INFER FROM THE EVIDENCE ACTUAL DELIBERATION WAS PRACTICAL, THUS THE DELIBERATE INDIFFERENCE STANDARD APPLIES.**

The district court erroneously held the heightened "purpose to harm" standard should apply because the evidence shows Mr. Wear continued to struggle and resist arrest after he was handcuffed.  1-ER-26.  This court should reverse the district court's decision because a reasonable jury could infer from the evidence that it was practical for Deputy Pawluk to deliberate before continuing to suffocate decedent with his bodyweight.

The record contains evidence that demonstrates that the deliberate indifference standard should apply because Deputy Pawluk had time to deliberate. After Deputy Pawluk handcuffed Mr. Wear, he remained on top of Mr. Wear.  8-ER-1612, 9-ER-1755-1756, 1767-1770, 1772-1773.  Mr. Wear was no longer a threat to the officers and the community once he was handcuffed. *See Wroth v. City of Rohnert Park*, No. 17-cv-05339-JST, 2019 U.S. Dist. LEXIS 68068, at *32-33 (N.D. Cal. Apr. 22, 2019).  Then, Deputy Pawluk took off the handcuffs that belonged to the Postal Office Police Officers.  *Id*.  While this was going on, Mario Ernesto Palacios screamed for the deputies to let Mr. Wear go, but Deputy Pawluk placed more pressure on Mr. Wear's neck.  9-ER-1771-1773.  Then, Mr. Palacios saw blood spilling out of Mr. Wear's mouth and yelled, "Let him go. You're killing him."  *Id*.  Mr. Palacios also observed Mr. Wear begin to tremble and turn

10

purple. 9-ER-1767-1769. The deputies responded, "get away, that they were the authorities, [and] that [he] had no reason to be there, that it was fine that [he] was holding him down before they got there, but now that they were there, there's no reason for [him] to be close." 9-ER-1772-1773. Mr. Palacios estimates the time that elapsed from when deputies' restrained Mr. Wear until the time he noticed Mr. Wear died was approximately 15 to 20 minutes." 9-ER-1775-1776. This evidence shows that Deputy Pawluk had to time deliberate. The situation at issue was not a rapidly evolving situation. Additionally, Mr. Wear posed no immediate threat. *A.D. v. California Highway Patrol*, 712 F.3d 446, 451,458 (9th Cir. 2013). The evidence demonstrates that when Deputy Pawluk continued to restrain Mr. Wear with his body after handcuffing him, other Postal Officers got off Mr. Wear because he was not a threat. A jury can reasonably infer from this evidence that Mr. Wear no longer posed an immediate threat.

The circumstances demonstrate that deliberation was practical at this time because the exigency had passed. A reasonable jury can infer from Mr. Palacios' observations that Deputy Pawluk applied more pressure to Mr. Wear's back after he complained, and Deputy Pawluk told him to get away. Palacios also estimated the time that elapsed from when deputies' restrained Mr. Wear until the time he noticed Mr. Wear died was approximately 15 to 20 minutes. *See Garlick v. Cty. of Kern*, 167 F.Supp.3d 1117, 1170-72 (E.D. Cal. 2016). In totality, the time elapses

11

should have been given deference by the district court when it was determining whether actual deliberation was practical. *Porter*, 546 F.3d at 1136.

The district court incorrectly held that "evidence shows that Pawluk's involvement, Wear continued to struggle and resist arrest, even after he was handcuffed." 1-ER-26. This finding contradicts the long-held principle that the court must view the evidence in a light most favorable of the non-moving party. The district court's holding ignored the facts that Mr. Wear and Mr. Palacios screamed for the deputies to let Decedent free because he was struggling to breathe. 9-ER-1771-1773. A reasonable inference from the evidence is Mr. Wear's continued struggle was gratuitous because he was struggling to breathe. *See Lopez v. City of Imperial* No. 13-CV-00597-BAS WVG, 2015 U.S. Dist. LEXIS 87441, 2015 WL 4077635, at *12 (S.D. Cal. July 2, 2015) (concluding a jury could find that a reasonable officer should have determined that an arrestee did not pose an immediate or serious threat when his physical response could plausibly have been an instinctive effort to protect himself from injury); *See also Aranda v. City of McMinnville*, 942 F.Supp.2d 1096, 1106 (D. Or. 2013).

In summation, the district court committed reversible error when it applied the heightened purpose to harm standard instead of the deliberate indifference standard. Therefore, this Court should reverse the district court's holding on this issue.

**C.  DEPUTY PAWLUK VIOLATED THE FOURTEENTH AMENDMENT BECAUSE HE ACTED WITH DELIBERATE INDIFFERENCE TO THE SUBSTANTIAL RISK OF SERIOUS HARM FACED BY DECEDENT, WHILE HE PLACED HIS BODY WEIGHT ON DECEDENT FOR OVER FIVE MINUTES**.

"Deliberate indifference occurs when an official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Solis v. County of Los Angeles*, 514 F.3d 946, 957 (9th Cir. 2008); *see also Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (a finding of deliberate indifference requires that the "official knows of and disregards an excessive risk"); *Board of the County Comm'rs v. Brown*, 520 U.S. 397, 415, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997) (same). "Government officials are, of course, justified in using force—even deadly force—in carrying out legitimate governmental functions. But, when the force is ... used without justification or for malicious reasons, there is a violation of substantive due process." *P.B. v. Koch*, 96 F.3d 1298, 1303 (9th Cir. 1996).

"Whether [officers] had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence ... and a factfinder may conclude that [an] official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842.

13

The record contains triable issues of fact as to whether the deputies consciously or recklessly disregarded the risk of positional asphyxiation while restraining Mr. Wear. The Ninth Circuit has long recognized that positional asphyxiation is a risk that arises when law enforcement officers place an individual in prone position, handcuffed, and restraining the individual with their own body weight. *Drummond v. City of Anaheim*, 343 F.3d 1052, 1056 (9th Cir. 2003); *see also Abston v. City of Merced*, 506 F. App'x 650, 653 (9th Cir. 2013); *Tucker v. Las Vegas Metro. Police Dep't*, 470 F. App'x 627, 629 (9th Cir. 2012); *Arce v. Blackwell*, 294 F. App'x 259, 261 (9th Cir. 2008).

The evidence demonstrates that Deputy Pawluk acted without a legitimate law enforcement objective. After Deputy Pawluk handcuffed Mr. Wear, he remained on top of Mr. Wear. 9-ER-1755-1756, 1767-1770, 1772-1773. At that point, Mr. Wear was no longer a threat to the officers and the community. *A.D. v. California Highway Patrol*, 712 F.3d 446, 451,458 (9th Cir. 2013). The lack of a threat inference is strengthened by the conduct of the other law enforcement officers after the handcuffing. Following the handcuffing, other law enforcement officers got off Mr. Wear. A reasonable inference from this evidence that other law enforcement officers did not believe Decedent was an immediate threat, so can a reasonable jury. Therefore, the need to continue to kneel on Mr. Wear's upper back to restrain him was not warranted.

14

As the Ninth Circuit explained in *Drummond v. City of Anaheim*, 343 F.3d 1052, 1059 (9th Cir. 2003), "any reasonable person should know that squeezing the breath from a complaint, prone, and handcuffed individual despite pleas for air involve a degree of force that is greater than reasonable." Similarly, Deputy Pawluk should have known that his actions were deliberately indifferent to the risk of serious injury or death. The evidence supports such a finding. Mario Ernesto Palacios screamed for Deputy Pawluk to let Mr. Wear go, but Deputy Pawluk placed more pressure on Mr. Wear's neck. 9-ER-1767-1769. After observing blood come out of Mr. Wear's mouth, Palacios yelled, "Let him go. You're killing him." 9-ER-1767-1769. He also observed Mr. Wear begin to tremble and turn purple. 9-ER-1767-1769. Despite Palacios informing Deputy Pawluk of Mr. Wear's condition, Deputy Pawluk responded, "get away, that they were the authorities, [and] that [he] had no reason to be there, that it was fine that [he] was holding him down before they got there, but now that they were there, there's no reason for [him] to be close." 9-ER-1772-1773. A reasonable jury could infer from this evidence that Deputy Pawluk was deliberately indifferent to the risk of serious injury or death posed by his conduct.

For these reasons, the district court erred, and the grant of summary judgment should be reversed.

15

**D.  ALTERNATIVELY, A REASONABLE JURY COULD INFER FROM THE EVIDENCE THAT DEPUTY PAWLUK'S ACTIONS WERE PURPOSEFUL AND UNRELATED TO LEGITIMATE LAW ENFORCEMENT OBJECTIVES**.

The district court erred when it determined that "[n]o evidence in the record shows that either De Casas or Pawluk acted with [purpose to harm]." 1-ER-27. The district court's reliance on Appellant having to produce evidence of officers' ulterior motives was misplaced. The district court's decision is not supported by the evidence in the record and must be reversed.

The Ninth Circuit has recognized circumstantial evidence could be used to infer that a law enforcement officer use of force was done so with the purpose to harm.  *Foster v. City of Indio*, 908 F.3d 1204, 1211 (9th Cir. 2018).  "A police officer lacks such legitimate law enforcement objectives when the officer 'had any ulterior motives for using force against' the suspect . . .  such as to bully a suspect or 'get even,' . . . , or when an officer uses force against a clearly harmless or subdued suspect. *Id*. (citing *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010), *Porter v. Osborn*, 546 F.3d 1131, 1140 (9th Cir. 2008), *Johnson v. Bay Area Rapid Transit Dist.*, 724 F.3d 1159, 1170 (9th Cir. 2013), *Zion v. Cty. of Orange*, 874 F.3d 1072, 1077 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 1548, 200 L. Ed. 2d 741 (2018).)

The district court erred by ignoring the third-party witness, Mario Palacios' account of Pawluk's use of force.  Palacios informed Deputy Pawluk about Mr.

16

Wear's readily apparent medical emergency. Despite this information, the deputies told Palacios to get out of the area and Pawluk placed more pressure of Mr. Wear's neck and upper back. A reasonable inference from this evidence is that that the deputy wanted to "get even" or "show a display of force" which constituted an improper purpose. *See Porter v. Osborn*, No. 3:05-cv-00142-JWS, 2009 U.S. Dist. LEXIS 117822 (D. Alaska Dec. 17, 2009)("Law enforcement officers involved in an escalating situation are capable of experiencing a full range of human emotion, and it may reasonably be said that [the officers] could have developed an improper 'purpose to harm' of the sort mentioned above during the course of the incident."). A reasonable juror could also infer based on the "officers' training that keeping a subject in a prone, face-down position with the weight of an officer on the subject's back creates a substantial risk of asphyxiation expands as times goes" that Deputy Pawluk's committed his conduct with purpose to harm. *Wallisa v. City of Hesperia*, 369 F.Supp.3d 990, 1017 (C.D. Cal. 2019). These facts are sufficient to raise issues of material fact to Appellant's Fourteenth Amendment claim. Therefore, the district court should be reversed, and summary judgment should have been denied.

**E.     THE DISTRICT COURT ERRED WHEN IT GRANTED SUMMARY JUDGMENT BECAUSE A REASONABLE JURY COULD INFER FROM THE EVIDENCE THAT DEPUTY DE CASAS WAS THE TRAINING OFFICER FOR DEPUTY PAWLUK AND WAS AN INTEGRAL PARTICIPANT IN DECEDENT'S DEATH.**

The district court erroneously determined that Deputy De Casas was entitled to summary judgment because there was no evidence that suggest he acted with ulterior motives. 1-ER-26. This holding is not supported by the case law and the record.

Because Deputy Pawluk used excessive force as explained in the previous sections constituted a deliberate indifference to Mr. Wear's life, this Court must reverse the district court's grant of summary judgment in favor of Deputy De Casas. A reasonable jury could also find from the circumstantial evidence (where Deputy Pawluk did not remove the pressure from Mr. Wear's back under these alleged conditions) that this inaction supports the inference that the officers were deliberately indifferent to the risk of serious injury or death posed by their conduct. *See Garlick v. Cty. of Kern*, 167 F.Supp.3d 1117, 1171 (E.D. Cal. 2016).

**F.     BECAUSE THE DEPUTIES ARE NOT ENTITLED TO QUALIFIED IMMUNITY, THE DISTRICT COURT'S GRANTING OF SUMMARY JUDGMENT SHOULD BE REVERSED.**

The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would have known." *Stanton v. Sims,* 571, U.S. 3, 134 S.Ct. 3 (2013) (quotation marks omitted); *Pearson v. Callahan,* 555 U.S. 223, 231 (2009). "[A] defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 134 S.Ct. 2012, 2023 (2014). To satisfy the clearly-established prong, previous cases do not have to involve the identical conduct. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "The focus is on whether the officer had fair notice that the officer's conduct was unlawful." *Rodriguez v. Ct'y of Los Angeles*, 891 F.3d 776, 795 (9th Cir. 2018) (citation and brackets omitted). In determining whether a right is clearly established, courts "may look at unpublished decisions and the law of other circuits, in addition to Ninth Circuit precedent." *Prison Legal News v. Lehman*, 397 F.3d 692, 702 (9th Cir. 2005); *Sorrels v. McKee*, 290 F.3d 965, 970 (9th Cir. 2002) (looking to "decisions of our sister Circuits, district courts, and state courts" in evaluating if law was clearly established). Furthermore, in considering qualified immunity, courts engage in a two-step inquiry. *Mattos v. Arganano*, 661 F.3d 443, 440 (9th Cir. 2011). The court must consider: (1) whether the officer's conduct deprived plaintiff of a constitutional or statutory right, and (2) whether the right in question was "clearly established" at the time of the incident.

*Saucier v. Katz*, 553 U.S. 194 (2001), overruled on different grounds; *Pearson*, 555 U.S. at p. 231. In the sections above, Plaintiff establishes how Defendant Deputies deprived Plaintiff of her rights under the Fourteenth Amendment. Below, Plaintiff explains how the deputies' conduct violated "clearly established" law.

Deputies Pawuk and De Casas violated clearly established law when Deputy Pawluk restrained Mr. Wear with his bodyweight and handcuffs for a prolonged period of time (over 5 minutes) and kills the detained suspect. It was clearly established in 2007, "that parents a decedent can recover under the substantive due process of prong of the Fourteenth Amendment for a loss of familial association when an officer unreasonably kills a fleeing suspect." *Estate of Kosakoff v. City of San Diego*, No. 08-CV-1819 - IEG (NLS), 2010 U.S. Dist. LEXIS 42113, at *38 (S.D. Cal. Apr. 29, 2010) (citing *Cunrow v. Ridgecrest*, 952 F.2d 321, 325 (9th Cir. 1991). Further, "it was also clearly established that a due process violation exists where the police officer's conduct shocks the conscience." *Estate of Kosakoff v. City of San Diego*, No. 08-CV-1819 - IEG (NLS), 2010 U.S. Dist. LEXIS 42113, at *38 (S.D. Cal. Apr. 29, 2010)(citing *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 848, 118 S. Ct. 1708, 1717 (1998); *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 372 (9th Cir. 1998). Moreover, in 2003, law enforcement officials were aware of the dangers that exist when officers are kneeling on a subject's back or neck to restrain him that may lead to death. *Drummond v. City of Anaheim*, 343

F.3d 1052, 1061-62 (9th Cir. 2003); *see also Timpa v. Dillard*, 20 F.4th 1020, 1038 (5th Cir. 2021).

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be reversed, and the case be remanded for further proceedings.

Date: May 24, 2023        **PLC LAW GROUP, APC**

By:   *Na'Shaun L. Neal*
       Peter L. Carr, IV
       Na'Shaun L. Neal
       Lauren K. McRae
       Attorneys for Plaintiff-Appellant
       *Donnelle Wear*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

**9th Cir. Case Number(s) 22-55895**

The undersigned attorney or self-represented party states the following:

[XX]  I am unaware of any related cases currently pending in this court.

[ ]  I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[ ]  I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

Signature: */s/ Na'Shaun L. Neal*          Date: May 24, 2023

22

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

**9th Cir. Case Number(s)  22-55895**

I am the attorney or self-represented party.

**This brief contains 4,548 words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[XX] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).


Signature:  */s/ Na'Shaun L. Neal*            Date: May 24, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on May 24, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Date: May 24, 2023        By:   */s/ Na'Shaun L. Neal*

                           Na'Shaun L. Neal